IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| O. THRONAS, INC., a Hawaii corporation; and KAUAI AGGREGATES, a Hawaii Limited Partnership, | ) ) ) ) ) | CV. NO. 09-00353 DAE-LEK |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| ALVA BLAKE, a.k.a. ALVA E. BLAKE, individually and as the Personal Representative of the Estate of Puanani Ilae Blake, formerly known as Helen Puanani Blake and Helen P. Blake; KEONI K. BLAKE; PATRICIA L. RIDER-BLAKE; KANAN K. BLAKE; and LEENA BLAKE, a.k.a. LEENA ALCARAZ BLAKE, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS WITH LEAVE TO AMEND; AND (2) GRANTING
<u>JOINING DEFENDANTS' MOTIONS FOR SUBSTANTIVE JOINDER</u>

On April 5, 2010, the Court heard Defendants' Motion to Dismiss.

Ralph O'Neill, Esq., and Michael Rudy, Esq., appeared at the hearing on behalf of

Plaintiffs; Jordan Kimura, Esq., Richard Wilson, Esq., Joe Moss, Esq., and Lyle

Hosoda, Esq., appeared at the hearing on behalf of Defendants.  After reviewing

the motion and the supporting and opposing memoranda, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion, with leave to amend. (Doc. # 44.)  The Court further **GRANTS** the Motions for Joinder filed by Defendants Alva Blake, Patricia Rider-Blake, and Keoni Blake  (Docs. ## 50, 52, 57.)

BACKGROUND

This matter involves an alleged fraudulent payroll check and wire transfer deposit scheme to embezzle funds from two Hawai`i corporations, O. Thronas, Inc. and Kauai Aggregates (collectively, "Plaintiffs").  On July 29, 2009, Plaintiffs filed a Complaint against Keoni K. Blake, Patricia L. Rider-Blake, Kanan K. Blake, Leena Blake, and Alva Blake (both individually and as the personal representative of the estate of Helen Puanani Blake) (collectively, "Defendants"). (Doc. # 1.)  Plaintiffs allege that the named Defendants engaged in a scheme with Helen Blake, deceased, over the course of approximately ten years and illegally received a total of $5,607,482.81 from Plaintiff Thronas and $6,146,300.00 from Plaintiff Kauai Aggregates.  (Id. at 3, 14.)

According to the Complaint, the scheme proceeded in the following way.  Helen Blake, who was the bookkeeper and office manager for Thronas from 1985 to 2007 and the secretary and director of Thronas from 1994-2007, held herself out as the authorized agent to report wages to Thronas' payroll agent,

Ceridian.  (Id. at 3, 13.)  Beginning in 1998 or 1999, Helen Blake purportedly formed an agreement with Defendants and, twice a month over a span of ten years, reported wages to Ceridian such that Helen Blake and Defendants would receive income not owed to them.  (Id. at 3.)  The Complaint charges 1416 instances of false reporting of W-2 wages to Ceridian, and false tax returns, by Helen Blake and Defendants.  (Id. at 15-16.)

This scheme was allegedly discovered by Plaintiffs in August 2007 after a meeting regarding payment irregularities.  According to Plaintiffs, Alva Blake subsequently admitted to taking money and made a partial reimbursement, but now refuses to pay the remainder of the funds.  (Doc. # 1 at 13.)

Counts I and II of the Complaint allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Counts III through VII are state law claims for fraud, conspiracy to defraud, breach of fiduciary duty, aiding and abetting, and unjust enrichment and constructive trust.

On January 19, 2010, Defendants Kanan Blake and Leena Blake filed the instant Motion to Dismiss.  (Doc. # 44.)  The remaining defendants filed substantive joinders to this motion on January 21, 2010.  (Docs. ## 50, 52, 57.)

Plaintiffs filed an Opposition on March 15, 2010.[1]  (Doc. # 90.)  Defendants' Reply was filed on March 22, 2010.  (Doc. # 99.)

STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Review is limited to the contents of the complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 989 (9th Cir. 2009); Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).   In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence.  In other words, a plaintiff must allege enough facts to state a claim for relief that is plausible on its face.  See id. at 570.  "[C]onclusory

---

[1] On March 25, 2010, Plaintiffs filed a Retraction of Specific Statements from and Errata to their Opposition.  (Doc. # 101.)  This filing does not affect the Court's substantive ruling herein.

allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." <u>McGlinchy v. Shell Chem. Co.</u>, 845 F.2d 802, 810 (9th Cir. 1988).

<u>DISCUSSION</u>

Defendants move this Court to dismiss Plaintiffs' RICO claims and decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Defendants argue four bases upon which this Court might dismiss the RICO claims: (1) Plaintiffs do not plead their cause of action with sufficient particularlity; (2) Plaintiffs' RICO case statement does not contain the requisite specificity required by Local Rule 9.1; (3) the RICO allegations do not adequately plead the required predicate acts; and (4) the statute of limitations bars all claims prior to July 29, 2005. (Mot. at 2.)

For reasons set forth below, the Court grants Defendants' motion to the extent that the Court dismisses without prejudice Plaintiffs' RICO claims but denies Defendants' motion to the extent that the Court will not dismiss Plaintiffs' state law claims at this juncture.

I.      <u>Failure to Adequately Plead Predicate Acts</u>

A plaintiff must prove the following five elements to succeed on a civil RICO claim: (1) conduct of the (2) enterprise (3) through a pattern of (4)

racketeering activity, and (5) that defendant caused injury to plaintiff's business or property.  Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir. 2002).

"Racketeering activity" is defined as any act indictable under several provisions of Title 18 of the United States Code, including acts of mail fraud and wire fraud.

Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004).

In order to demonstrate a "pattern" of racketeering activity, as required by § 1962, a plaintiff must allege at least two predicate acts.  H.J. Inc. v. NW Bell Tel. Co., 492 U.S. 229, 237-38 (1989).  The two predicate acts must not be isolated or sporadic; they must be related and amount to or pose a threat of continued criminal activity.  Id. at 239.  "The predicate acts of racketeering satisfy the relationship test if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated.'"  Corley v. Rosewood Care Ctr., Inc. of Peoria, 142 F.3d 1041, 1048 (9th Cir. 1998).  Proof of continued criminal activity may be established through a series of related acts that extend over a substantial period of time, known as close-ended continuity, or by a showing of a threat of repetition, known as open-ended continuity.  Turner, 362 F.3d at 1229. "Predicate acts extending over a few weeks or months and threatening no future criminal

conduct do not satisfy this [continuity] requirement." <u>H.J. Inc.</u>, 492 U.S. at 241;

<u>Howard v. Am. Online Inc.</u>, 208 F.3d 741, 750 (9th Cir. 2000).

    A.    <u>Count I</u>

        In Count I, Plaintiffs claim that Defendants violated 18 U.S.C.

§ 1962(c), which prohibits any person employed by or associated with any

enterprise engaged in interstate commerce to conduct or participate in the conduct

of the enterprise's affairs through a pattern of racketeering activity.  Defendants

allegedly violated section 1962(c) by "knowingly execut[ing] a fraudulent scheme

or artifice to embezzle funds."  (Compl. at 17.)

        According to Plaintiffs, the predicate acts in furtherance of this

scheme consisted of mail fraud, in violation of 18 U.S.C. § 1342, and wire fraud, in

violation of 18 U.S.C. § 1343, over the course of ten years.  (<u>Id.</u>)  For reasons set

forth below, Plaintiffs fail to adequately plead predicate acts of either mail fraud or

wire fraud in Count I.

    1.    <u>Mail Fraud</u>

        Allegations of mail fraud are ancillary to allegations of fraud, and they

depend upon a finding that the mail was sent with the intent to defraud.  18 U.S.C

§ 1341 ("Whoever, having devised or intending to devise any scheme or artifice to

defraud . . . places in any post office . . . any matter or thing . . . ."); <u>see</u> <u>United</u>

States v. Rasheed, 663 F.2d 843, 847 (9th Cir. 1981) ("[S]pecific intent to defraud is an element of the crime of mail fraud."); see also Horn v. Ray E. Friedman & Co., 776 F.2d 777, 782 (8th Cir. 1985) ("Not having been shown to have committed any fraudulent act, [defendant] could not have violated section 1343."). Plaintiffs must show that "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir. 1986).

According to Plaintiffs, mail fraud is evident because Defendants used United States mail to transmit false W-2 and tax statements to the Internal Revenue Service ("IRS"). It is notable that Plaintiffs do not allege that mail fraud was committed when the checks were mailed to Defendants, but instead allege that mail fraud was committed when Defendants filed their tax returns. (Compl. at 17-18.)

"To be part of the execution of the fraud . . . the use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be 'incident to an essential part of the scheme, or a step in the plot.'" Schmuck v. United States, 489 U.S. 705, 710-11 (1989) (citations and quotations omitted). The

issue before the Court, therefore, is whether the mailings in this case were incident to the essential part of the scheme.  The Court concludes that they were not.

Plaintiffs' claim of mail fraud as a predicate act fails primarily because the mailing about which Plaintiffs complain were Defendants' mailings of their tax returns to the IRS.  The alleged fraud in the Complaint, however, was embezzlement of funds from Plaintiffs.  Any reporting of alleged ill-gotten funds to the IRS clearly occurred after consummation of the fraudulent objective to retain funds from Plaintiffs.  The funds were in the possession of the intended recipients long before any reporting was made to the IRS.   Whether Defendants submitted those W-2 forms to the IRS along with their tax returns, supposedly knowing that their tax returns were false, would presumably go to whether Defendants committed a crime against the United States, not against Plaintiffs.

Plaintiffs' reliance on United States v. Farr, 297 F.3d 651 (7th Cir. 2002), and United States v. Fritzson, 979 F.2d 21 (2d Cir. 1992), is unavailing. Not only are both cases from outside this circuit, but both are substantively distinguishable.  In Farr, a criminal case, the defendant had submitted his fraudulent W-2 statements and tax returns directly to the banks from which he sought loans.  297 F.3d at 654.  The defendant thereby directly used the forms as part of the scheme to defraud the banks themselves.  In Fritzson, another criminal

9

case, the defendant had pled guilty to mail fraud and making false claims to the IRS. 979 F.2d at 21. The court's opinion addresses the sentencing guideline applied at sentencing, not the underlying acts, and is therefore inapposite to the matter at hand.

Accordingly, Plaintiffs' argument that mailing income tax returns to the IRS constitutes a predicate act of the fraud against Plaintiffs is meritless.

2.   Wire Fraud

To prove wire fraud, a plaintiff must show that "(1) the defendants formed a scheme to or artifice to defraud; (2) the defendants used the United States wires or caused a use of the United States wires in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir. 1986) (citation omitted).

According to Plaintiffs, wire fraud is evident because at least two Defendants, Kanan Blake and Leena Blake, who lived in the State of California, would receive wire transfers from either Alva or Helen Blake in the State of Hawaii from 1997 to 2007. (Compl. at 18.) Alva or Helen Blake "used wire communications within the meaning of 18 U.S.C. § 1343 to transfer portions of the embezzled funds from the State of Hawaii" to Kanan and Leena Blake. (Id.) No

10

further information is provided about these alleged acts of wire fraud, including the date on which the transfer occurred of or specific location to which the funds were wired.

Construing the Complaint liberally and assuming as true the facts as pled by Plaintiffs, the Court finds there is simply not enough information in the Complaint for this Court to conclude that Plaintiffs have met their pleading requirement to survive a motion to dismiss.  Without any dates or specific information of any kind, this Court is unable to evaluate whether the alleged acts of wire fraud may constitute predicate acts to support a RICO claim.

B.    Count II

In Count II, Plaintiffs claim that Defendants violated 18 U.S.C. §1962(d), which prohibits any person from conspiring to violate any of the provisions of subsections (a), (b), and (c).  Count II alleges that each defendant "was aware of the essential nature and scope of the fraudulent scheme and intended and agreed amongst themselves to participate in it" and thereby conspired to violate subsection 1962(c).  (Compl. at 21.)  According to Plaintiffs, each defendant participated in the scheme to embezzle over $11,753,782.81 ($5,607,482.81 from Thronas and $6,146,300.00 from Kauai Aggregates) from 1998 to 2007.  (Id. at 19.)  Defendants purportedly participated in the scheme by

11

accepting sums which they knew or reasonably should have known were embezzled proceeds disguised as payroll payments, and by filing W-2 and tax statements and mailing them to the IRS to disguise and conceal the embezzled proceeds.  (Id. at 20.)  In the RICO Case Statement, the only evidence that Plaintiffs present to show the existence of a conspiracy is a bald allegation that each defendant filed fraudulent W-2 and tax statements with the IRS.  (Doc. # 3 at 10.)

It is difficult to discern from Plaintiffs' pleadings whether Plaintiffs allege wire fraud constitutes the underlying predicate acts for this conspiracy claim.  The Complaint and Case Statement focus primarily on the IRS mailings.  The Court has already concluded that the IRS mailings in this case do not constitute predicate acts for a violation of 18 U.S.C. § 1962(c), and therefore the conspiracy charge cannot be based on them.  See generally United States v. Fiander, 547 F.3d 1036, 1040-41 (9th Cir. 2008) (noting that defendants in a conspiracy charge must have been aware that someone would commit at least two predicate acts).

As the record before the Court currently stands, Plaintiffs have not actually pled any predicate acts applicable to the conspiracy claim.

II.      Failure to State Cause of Action with Particularity

        Defendants further argue that Plaintiffs' Complaint does not state their

cause of action with the requisite particularity.  Generally, heightened pleading

requirements apply to fraud claims.  FRCP 9(b) requires that when "alleging fraud

or mistake, a party must state with particularity the circumstances constituting

fraud or mistake."  Rule 9 requirements demand that "the circumstances

constituting the alleged fraud 'be specific enough to give defendants notice of the

particular misconduct . . . so that they can defend against the charge and not just

deny that they have done anything wrong.'"  Kearns v. Ford Motor Co., 567 F.3d

1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019

(9th Cir. 2001)) (second internal quotation omitted).  These heightened

requirements apply to RICO allegations of fraud under section 1962(c), and a

plaintiff "must identify the time, place, and manner of each fraud plus the role of

each defendant in each scheme."  Moore v. Kayport Package Exp., Inc., 885 F.2d

531, 541 (9th Cir. 1989); see Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994).

        The time, place, manner, and role of each defendant in the scheme are

entirely missing from Plaintiffs' pleadings.  As Defendants correctly note, the only

acts mentioned with any specificity are those by Helen Blake, who is deceased and

not a named defendant in this action.  Furthermore, the RICO Case Statement

13

regarding the wire fraud states only that amount of embezzled funds, the locations of the wire transfers, and the dates of the wire transfers, will be determined upon discovery.  (Case St. at 5.)  Plaintiffs state that they may request leave to amend to plead the exact dates and times of the interstate wire transfers.  (Id. at 12.)

Plaintiffs rely heavily on Exhibit A attached to their Complaint, which is a simple chart listing years and dollar values that each defendant allegedly illegally obtained from Plaintiffs.  (Compl. Ex. A.)  There are no specific dates provided for particular transactions, only yearly totals for each defendant.  There are also no exhibits of any paperwork or bank account balances to substantiate this chart.  The exhibit is simply a tabulated summary of Plaintiffs' allegations.

Despite the deficiencies in the pleadings recounted above, the Court cannot at this juncture conclude that granting Plaintiffs leave to amend would be futile.  Therefore, Counts I and II are DISMISSED with leave to amend.

III.   Statute of Limitations

"In the absence of a statutory limitations period, the Supreme Court has determined by case law that a four-year statute of limitations applies to civil RICO actions."  Tanaka v. First Hawaiian Bank, 104 F. Supp. 2d 1243, 1245 (D. Haw. 2000) (citing Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987)).  To determine when the statute of limitations begins to run,

14

the Ninth Circuit employs the "injury discovery rule."  Pincay v. Andrews, 238

F.3d 1106, 1109 (9th Cir. 2001).  Under the injury discovery rule, "'the civil RICO

limitations period begins to run when a plaintiff knows or should know of the

injury that underlies his cause of action.'"  Id. (quoting Grimmett v. Brown, 75

F.3d 506, 510-11 (9th Cir. 1996)).  "Even if a plaintiff did not know the injury was

caused by a pattern of RICO activity, a claim would still accrue and the statute of

limitations would still run."  Tanaka, 104 F. Supp. 2d at 1246.  This rule creates a

"disjunctive two-prong test of actual or constructive notice, under which the statute

begins running under either prong."  Pincay, 238 F.3d at 1109.  A plaintiff is

"'deemed to have had constructive knowledge if it had enough information to

warrant an investigation which, if reasonably diligent, would have led to discovery

of the fraud.'"  Id. at 1110 (quoting Beneficial Standard Life Ins. Co., 851 F.2d

271, 275 (9th Cir. 1988)).  Notably, "constructive notice begins to run the statute

of limitations regardless of any fiduciary relationship between the injured and the

injurer."  Id. at 1109.

Plaintiffs' Complaint was filed on July 29, 2009, and ordinarily under

the four-year statute of limitations period, Plaintiffs may seek redress for violations

only as far back as July 29, 2005.  Defendants argue that all RICO claims prior to

July 29, 2005, must be dismissed pursuant to the injury discovery rule, because

15

Plaintiffs should have discovered the fund transfers during the annual year-end

accounting procedures.  (Mot. at 16-17.)  Indeed, if Plaintiffs' allegations are true,

then there were either hundreds of thousands or millions of dollars taken from

Plaintiffs each year.  (Mot. at 16; Compl. Ex. A.)  Plaintiffs, however, argue that

the Court should equitably toll the statute of limitations period based on the

doctrine of fraudulent concealment.  (Opp'n at 24.)

   The civil RICO statute of limitations period is subject to equitable

tolling doctrines, including fraudulent concealment.  <u>Grimmett v. Brown</u>, 75 F.3d

506, 514 (9th Cir. 1996) (citing <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d 1190,

1199 (9th Cir. 1988)).  The fraudulent concealment doctrine is "'properly invoked

only if a plaintiff establishes affirmative conduct upon the part of the defendant

which would, under the circumstances of the case, lead a reasonable person to

believe that he did not have a claim for relief.'"  <u>Pincay</u>, 238 F.3d at 1110 (quoting

<u>Volk v. D.A. Davidson & Co.</u>, 816 F.2d 1406, 1415 (9th Cir. 1987)).  In other

words, to invoke this doctrine, "the plaintiff [must] both plead[] and prove[] that

the defendant actively mislead [plaintiff], and that [plaintiff] had neither actual nor

constructive knowledge of the facts constituting [the] cause of action despite [the

plaintiff's] due diligence."  <u>Grimmett</u>, 75 F.3d at 514 (citing <u>Volk</u>, 816 F.2d at

1415); <u>see also</u> <u>Pincay</u>, 238 F.3d 1106, 1110 ("[T]here is a long line of our cases

holding that, in order to prevail on such a claim, plaintiffs 'must demonstrate that they had neither actual nor constructive notice of the facts constituting their claims for relief.'" (quoting <u>Volk</u>, 816 F.2d at 1415)).

The active concealment requirement for the fraudulent concealment doctrine "necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." <u>Santa Maria v. Pacific Bell</u>, 202 F.3d 1170, 1177 (9th Cir. 2000). A failure to "own up" does not constitute active concealment. <u>Grimmett</u>, 75 F.3d at 515 (citation omitted). Furthermore, the "silence or passive conduct" of a defendant does not constitute fraudulent concealment. <u>Volk v. D.A. Davidson & Co.</u>, 816 F.2d 1406, 1415 (9th Cir. 1987) (citing <u>Rutledge v. Boston Woven Hose & Rubber Co.</u>, 576 F.2d 248, 250 (9th Cir. 1978)). Nor does a party's simple ignorance of the cause of action, in itself, toll the limitations period. <u>Grimmett</u>, 75 F.3d at 515.

Fraudulent concealment in the context of civil RICO actions also embody a "due diligence" requirement. <u>Klehr v. A.O. Smith Corp.</u>, 521 U.S. 179, 196 (1997); <u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1239 (9th Cir. 1998.) This requirement reflects the Supreme Court's view that civil RICO actions "seek not only to compensate victims but also to encourage those victims themselves

diligently to investigate and thereby uncover unlawful activity." <u>Klehr</u>, 521 U.S. at 195.

Thus, to properly invoke the doctrine of fraudulent concealment in their Complaint, Plaintiffs must "plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts." <u>See</u> <u>Volk</u>, 816 F.2d at 1415-16.

Plaintiffs assert that they have "adequately pled fraudulent concealment in order to equitably toll the statute of limitations for embezzlement of funds prior to July 29, 2005." (Opp'n at 24.) The Court disagrees. There is no assertion in either Plaintiffs' Opposition or Complaint that Plaintiffs used any due diligence to uncover the illegal activity. Plaintiffs do not even allege that they engaged in diligence of any kind. Such a pleading is a necessary component to invoking the fraudulent concealment doctrine. <u>See</u> <u>Volk</u>, 816 F.2d at 1415-16. This is particularly noteworthy as, assuming Plaintiffs' allegations are true, up to millions of dollars each year would have been missing from Plaintiffs' accounting, spanning ten years. Moreover, Plaintiffs present only vague allegations of concealment, stating that Defendants "have pleaded or have threatened to plead the Fifth Amendment privilege against self incrimination," that "Alva Blake . . . had

18

control of the evidence that fraudulently concealed the embezzlement," and that

Alva and Helen Blake destroyed evidence.  (Opp'n at 25-26.)  There is no

information specifically as to actions taken by Defendants Keoni, Patricia, Kanan,

and Leena Blake that might constitute concealment.  The Complaint is facially

deficient on these grounds.

Whether Defendants actually engaged in fraudulent concealment is a

question more suitable for factual investigation and not appropriately disposed of

in a motion to dismiss.  The Court is hard-pressed to conclude, however, that

Plaintiffs have adequately pled fraudulent concealment by Defendants.

For these reasons and because Plaintiffs failed to adequately plead the

requisite RICO predicate acts and failed to plead their fraud claim with

particularity, Defendants' motion to dismiss Counts I and II is GRANTED.  Counts

I and II are DISMISSED WITH LEAVE TO AMEND.

IV.    Remaining State Law Claims

Defendants move this Court to decline supplemental jurisdiction over

the state law claims, Counts III through VII.  Because the Court has granted

Plaintiffs leave to amend the complaint, dismissal of the state law claims at this

time is premature.  Accordingly, Defendants' motion to dismiss the state law claims is DENIED WITHOUT PREJUDICE.  Defendants may file a motion anew if and when such motion is appropriate.

V.     Substantive Joinders

Upon review of the motions for joinder, and for good cause being shown, the Court GRANTS the Joinders pursuant to Local Rule 7.9.  The Defendants seek the same relief sought by Kanan and Leena Blake to the extent that they seek dismissal of Counts I and II.  Accordingly, Counts I and II are DISMISSED WITH LEAVE TO AMEND as to all Defendants.

CONCLUSION

For the reasons stated above, the Court: (1) Grants in part and Denies in part Defendants' Motion to Dismiss with leave to amend; and (2) Grants Joining Defendants' Motions for Substantive Joinder.

Counts I and II are dismissed with leave to amend as to all Defendants.  Plaintiffs are granted not more than 30 days from the filing of this Order within which to file a First Amended Complaint in conformity with this order as to Counts I and II.  The Court emphasizes that this order in no way grants Plaintiffs leave to add additional claims or allegations to those articulated in the

Complaint.  Failure to comply with this Order will result in dismissal of this action with prejudice.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 7, 2010.



_____
David Alan Ezra
United States District Judge

O. Thronas, Inc., et al. v. Blake, et al., CV No. 09-00353 DAE-LEK;
ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS WITH LEAVE TO AMEND; AND (2) GRANTING
JOINING DEFENDANTS' MOTIONS FOR SUBSTANTIVE JOINDER