IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| O. THRONAS, INC., a Hawaii corporation; and KAUAI AGGREGATES, a Hawaii Limited Partnership, | ) ) ) ) ) | CV. NO. 09-00353 DAE-LEK |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| ALVA BLAKE, a.k.a. ALVA E. BLAKE, as the Personal Representative of the Estate of Puanani Ilae Blake, formerly known as Helen Puanani Blake and Helen P. Blake; KEONI K. BLAKE; PATRICIA L. RIDER-BLAKE; KANAN K. BLAKE; and LEENA BLAKE, a.k.a. LEENA ALCARAZ BLAKE, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER: (1) GRANTING MOTIONS FOR JOINDER; (2) GRANTING
DEFENDANTS' MOTION TO DISMISS; (3) DISMISSING WITH PREJUDICE
COUNTS I AND II; (4) DECLINING SUPPLEMENTAL JURISDICTION OVER
REMAINING STATE LAW CLAIMS; AND (5) VACATING HEARING

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendants' motion and the

supporting and opposing memoranda, the Court **GRANTS** Defendant's  Motion to

Dismiss.  (Doc. # 123.)  The Court **GRANTS** the motions for joinder.  (Docs. ## 124, 125, 127.)  Counts I and II, the federal claims, are hereby **DISMISSED WITH PREJUDICE**.  The Court further **DECLINES** supplemental jurisdiction over the remaining state law claims.  The hearing on these matters is hereby **VACATED**.

<u>BACKGROUND</u>

This matter involves an alleged fraudulent payroll check and wire transfer deposit scheme to embezzle funds from two Hawai`i corporations, O. Thronas, Inc. and Kauai Aggregates (collectively, "Plaintiffs").  On July 29, 2009, Plaintiffs filed a Complaint against Keoni K. Blake, Patricia L. Rider-Blake, Kanan K. Blake, Leena Blake, and Alva Blake (both individually and as the personal representative of the estate of Helen Puanani Blake) (collectively, "Defendants").  (Doc. # 1.)  Plaintiffs asserted multiple state and federal claims, including violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

On April 7, 2010, this Court dismissed Plaintiffs' RICO claims without prejudice and granted Plaintiffs leave to file an amendment complaint (the "April 2010 Order").  (Doc. # 115.)  In the April 2010 Order, the Court concluded that Plaintiffs had failed to adequately plead the predicate acts for their RICO

2

charges and had failed to meet the heightened pleading requirements for fraud claims.  Plaintiffs were permitted to amend their federal RICO claims in Counts I and II, but were not permitted to add additional claims or allegations.

On May 7, 2010, Plaintiffs filed their First Amended Complaint ("FAC").  (Doc. # 118.)  Plaintiffs allege that Defendants engaged in a scheme with Helen Blake, deceased, over the course of approximately ten years and illegally received over $11,933,052.26 from fraudulent payroll checks and fraudulent wire transfer deposits.  (Id. ¶¶ 3, 53.)  Counts I and II again allege RICO violations.  Counts III through VII are state law claims for fraud, conspiracy to defraud, breach of fiduciary duty, aiding and abetting, and unjust enrichment and constructive trust.

According to the FAC, the scheme proceeded in the following way. Helen Blake, who was the bookkeeper and office manager for Thronas from 1985 to 2007 and the secretary and director of Thronas from 1994-2007, held herself out as the authorized agent to report wages to Thronas' payroll agent, Ceridian. Beginning in 1998 or 1999, Helen Blake purportedly formed an agreement with Defendants and, twice a month over a span of ten years, reported wages to Ceridian such that Helen Blake and Defendants would receive income not owed to them. (Id. ¶ 3.)  Ceridian has offices in Honolulu, Hawaii and Atlanta, Georgia.  (Id. ¶ 3.)

3

This scheme was allegedly discovered by Plaintiffs in August 2007 after a meeting regarding payment irregularities.  According to Plaintiffs, Alva Blake subsequently admitted to taking money and made a partial reimbursement, but now refuses to pay the remainder of the funds.  (Id. ¶ 49.)

On June 4, 2010, Defendant Alva Blake filed the instant Motion to Dismiss.  (Doc. # 123.)  On the same day, the remaining defendants filed motions for joinder to the motion to dismiss.  (Docs. ## 124, 125, 127.)  On July 26, 2010, Plaintiffs filed an Opposition.  (Doc. # 148.)  On August 2, 2010, Defendant Alva Blake filed a Reply.  (Doc. # 149.)

<u>STANDARD OF REVIEW</u>

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P 8(a)(2).  "Each allegation must be simple, concise, and direct."  Id. 8(d)(1).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right of relief above the speculative level."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than

4

. . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (citation omitted).

The complaint must provide enough information so that the defendant can respond to the allegations and fashion meaningful discovery requests. McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).  Furthermore, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1949 (2009).

Generally, heightened pleading requirements apply to fraud claims. FRCP 9(b) requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  The Rule 9 requirements demands that "the circumstances constituting the alleged fraud 'be 'specific enough to give defendants notice of the particular misconduct . . . so that they an defend against the charge and not just deny that they have done anything wrong.'"" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 10104, 1019 (9th Cir. 2001)).

## DISCUSSION

Defendants move this Court to dismiss Plaintiffs' RICO claims and decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Because failure to adequately plead racketeering activity also concerns Defendants' argument under Rule 9(b), the Court addresses both issues simultaneously.

I.      Count I – Alleged Racketeering Activity

Plaintiffs once again claim that Defendants violated 18 U.S.C. § 1962(c) by embezzling Plaintiffs' funds over a ten-year period and "knowingly execut[ing] a fraudulent scheme or artifice to embezzle funds." (FAC ¶ 106.) Section 1962(c) prohibits any person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c).

As outlined in this Court's April 2010 Order, Plaintiffs must prove the following five elements to succeed on a civil RICO claim: (1) conduct of the (2) enterprise (3) through a pattern of (4) racketeering activity, and (5) that defendant caused injury to plaintiff's business or property. Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir. 2002); Odom v. Microsoft Corp., 486 F.3d 541, 547

6

(9th Cir. 2007).  "Racketeering activity" is defined as any act indictable under several provisions of Title 18 of the United States Code, including acts of mail fraud and wire fraud.  <u>Turner v. Cook</u>, 362 F.3d 1219, 1229 (9th Cir. 2004).

In order to demonstrate a "pattern" of racketeering activity, as required by § 1962, a plaintiff must allege at least two predicate acts.  <u>H.J. Inc. v. NW Bell Tel. Co.</u>, 492 U.S. 229, 237-38 (1989).  The two predicate acts must not be isolated or sporadic; they must be related and amount to or pose a threat of continued criminal activity.  <u>Id.</u> at 239.  "The predicate acts of racketeering satisfy the relationship test if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated.'"  <u>Corley v. Rosewood Care Ctr., Inc. of Peoria</u>, 142 F.3d 1041, 1048 (9th Cir. 1998).

In the April 2010 Order, the Court dismissed Plaintiffs' Complaint on the basis that it had failed to adequately plead the components of a RICO charge, but granted Plaintiffs leave to amend the complaint.  Specifically, the Court concluded that Plaintiffs failed to plead predicate acts of mail fraud or wire fraud.  (Apr. 2010 Order at 7-11.)  In the instant motion to dismiss, Defendants again move to dismiss Count I on the basis that Plaintiffs have not pled predicate acts, have not met the heightened pleading requirements for fraud allegations, and have

7

not properly demonstrated the existence of an enterprise.  The Court agrees that

Plaintiffs have again failed to adequately plead the existence of predicate acts.

A.    Predicate Acts

Defendants allegedly committed wire fraud and mail fraud in

furtherance of the alleged embezzlement scheme.  The Court reviews each alleged

predicate act in turn.  The Court has already ruled on these matters in its April

2010 Order, and in addition to reviewing Defendants' motion, the Court reviews

Plaintiffs' First Amendment Complaint to ensure that it conforms with the

directive in the Court's April 2010 Order.

1.    Wire Fraud

From 1998 through 2007, Helen Blake "caused Ceridian to instruct

[First Hawaiian Bank] to make the unauthorized payments . . . and to transfer the

Co-Plaintiffs' funds to the Internal Revenue Service to pay the federal tax

withholding amounts that Ceridian had calculated at her direction."  (FAC ¶ 118.)

According to Plaintiffs, on the first business day and the first business day after the

fifteenth of every month, Helen Blake made a local call to Ceridian's Honolulu

representative.  (Id. ¶ 58.)  She would verbally instruct Ceridian to make certain

payments.  (Id.)  Ceridian entered the information into its computers, and that

information was then transmitted interstate to Ceridian's data processing

8

computers in Atlanta, Georgia.  (Id. ¶ 59.)  The payroll data was then transmitted from Georgia back to Ceridian's computers in Hawaii.  (Id. ¶ 61.)  Ceridian then sent payroll payment confirmation to Plaintiffs by way of a courier service, which itself utilized an air cargo service.  (Id. ¶ 64.)

The crux of Plaintiffs' wire fraud allegation is the fact that Ceridian's Georgia office transmitted by wire the payroll information to First Hawaiian Bank in Hawaii, which then made the payments to Defendants.  (Id. ¶ 65.)  First Hawaiian Bank would then transfer payments to Defendants via check or EFT, and would also transfer state and federal tax withholdings.  (Id. ¶¶ 70-72.)  Plaintiffs believe that Defendants would have foreseen that "Helen Blake would use interstate wire transmissions by Ceridian . . . in furtherance of the embezzlement scheme."  (Id. ¶ 77.)

To demonstrate wire fraud, a plaintiff must show that "(1) the defendants formed a scheme to or artifice to defraud; (2) the defendants used the United States wires or caused a use of the United States wires in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir. 1986) (citation omitted).

The FAC does not actually identify any action that the named Defendants took in furtherance of the scheme.  The FAC focuses exclusively on actions by Helen Blake.  Plaintiffs claim only that Defendants were aware of what Helen Blake was doing and received the benefits of it.  (FAC ¶ 77.)

The FAC also does not allege that any Defendant, or even Helen Blake, participated in an interstate wire transfer.  The interstate activity was conducted by Ceridian's Georgia and Hawaii offices, and by Ceridian's Georgia office when it transmitted information to First Hawaiian Bank.  Plaintiffs' theory is that because Helen Blake set that activity in motion when she called Ceridian's Hawaii office, wire fraud may be imputed onto the Defendants.

The Court must first evaluate whether the interstate communications between Ceridian's Hawaii and Georgia offices and Ceridian's Georgia office and First Hawaiian bank satisfy the statutory requirement that Defendants "caused a use of the United States wires."  The Court concludes that Plaintiffs' allegations are not plausible.

Plaintiffs offer no meaningful explanation as to how this activity might be imputed to Defendants.  The FAC is devoid of any factual allegation that Helen Blake and Defendants would have or should have known that Ceridian would make interstate transmissions.  Helen Blake communicated only with

10

Ceridian's Honolulu office.  Defendants received their paychecks from First Hawaiian Bank.  There is no allegation that First Hawaiian Bank made any interstate transfers to Defendants' accounts.

In fact, there is not a single statement in the FAC alleging that any defendant actually named in this case caused the use of wires interstate.  The Court has carefully reviewed the FAC, and any interstate transfer was by Ceridian or First Hawaiian Bank.  Believing as true all allegations in the FAC, the only person in communication with Ceridian or First Hawaiian Bank who could reasonably be accused of "causing" anything is Helen Blake.  The FAC states that "Helen Blake caused to be issued by co-Plaintiffs' payroll agent," that "Helen Blake caused Ceridian's offices in Atlanta, Georgia to transmit by means of interstate wire to [First Hawaiian Bank]," that "Helen Blake would instruct Ceridian as to the amount of unauthorized funds each defendant was to receive each pay period," and that "Helen Blake made these fraudulent communications to Ceridian's payroll representative in Honolulu."  (FAC ¶¶ 3, 4, 54, 57 (emphasis added).)  The FAC simply does not allege any act by any Defendant that might constitute a predicate act, or any act by a Defendant that would cause a predicate act.

Plaintiffs seemingly attempt to cure this defect by claiming that Defendants were in a conspiracy with Helen Blake.  This theory is circular and

11

fails as a matter of law.  A conspiracy to violate the wire fraud statute cannot,

itself, be the predicate act of wire fraud.  See United States v. Brooklier, 685 F.2d

1208, 1216 (9th Cir. 1982) (noting that there are only limited situations in which a

conspiracy may constitute a predicate act, including those offenses listed in section

1961(1)(D) constituting controlled substance violations); United States v. Martino,

648 F.2d 367, 400 (5th Cir. 1981) (conspiracy to commit mail fraud is not a

predicate act); United States v. Weisman, 624 F.2d 1118, 1123-24 (2nd Cir. 1980),

abrogated on other grounds as recognized by Ianniello v. United States, 10 F.3d 59

(2nd Cir. 1993) (limiting circumstances when a conspiracy may be a predicate act

to those offenses listed in section 1961(1)(D)); United States v. Awad, 518 F.

Supp. 2d 577, 583 (S.D.N.Y. 2007).  Indeed, the Ninth Circuit has held that a

failure to satisfy the pleading requirements for a section 1962(c) claim

(racketeering activities) necessarily means a failure to satisfy the pleading

requirements for a section 1962(d) claim (conspiracy).  Wagh v. Metris Direct,

Inc., 348 F.3d 1102, 1112 (9th Cir. 2003), overruled on other grounds by Odom v.

Microsoft Corp., 486 F.3d 541 (9th Cir. 2007).  Plaintiffs therefore cannot cure

their 1962(c) claims by making a 1962(d) conspiracy claim.

        Plaintiffs also submit that wiring of taxes and W-2 forms by Ceridian

and/or First Hawaiian Bank qualifies as the predicate wire fraud.  As discussed in

12

this Court's April 2010 Order, such income tax filings occurred <u>after</u> the

consummation of and was merely ancillary to any fraudulent objective on the part

of Defendants.  This Court is unconvinced by Plaintiffs' assertion that paying taxes

was essential to Defendants' fraudulent scheme by virtue of tax forms somehow

hiding the fact that they were embezzling money.  Indeed, if the Court were to

adopt this line of reasoning, then filing taxes would become a necessary

component of a RICO embezzlement charge, an added requirement for which there

is no support in the case law.

   This Court's review of case law leads the Court to conclude that

simply paying taxes on ill-gotten funds, without being significant to completion of

the embezzlement scheme, cannot transform an intrastate activity into a RICO

charge.  The Supreme Court has addressed this issue as it pertains to the analogous

mail fraud statute, and concluded:  "[W]e think it cannot be said that mailings

made or caused to be made under the imperative command of duty imposed by

state law are criminal under the federal mail fraud statute."  <u>Parr v. United States</u>,

363 U.S. 370, 391 (1960).  In <u>Parr</u>, the scheme was complete when the defendants

received the goods at the time they used the stolen credit cards; the subsequent

mailing of invoices was immaterial.  <u>Id.</u> at 393.  Likewise, the scheme at issue

before this Court would have been completed when the funds were transferred to

13

Defendants; any subsequent tax returns or withdraws was immaterial and tangential.  The Eighth Circuit has relied on Parr to conclude that "[t]he mail fraud statute may not be invoked where . . . the mailings are 'legally compelled' . . . and take place after the object of the scheme has been accomplished."  United States v. Boyd, 606 F.2d 792, 794 (8th Cir. 1979).  The Tenth Circuit has observed that under Parr, mailings or wire transfers "cannot be for the purpose of executing a fraud when they are made only in response to an 'imperative command of duty imposed by . . . law," unless they are also false or fraudulent."  United States v. Wittig, 575 F.3d 1085, 1093 (10th Cir. 2009).  As discussed below, there is no allegation that the tax wires or mailings were themselves false or fraudulent.

        The Court reaffirms its conclusion that any tax mailings or wire transfers in this case were not sufficiently closely related to the scheme.  The Court evaluates Plaintiffs' claims on this issue in further detail below with respect to the mail fraud predicate acts.[1]

        Finally, the Court notes that Plaintiffs did not abide by the Court's April 2010 Order when Plaintiffs amended their complaint.  The Court could

--------

        [1] "The mail fraud and wire fraud statutes 'share identical language' regarding the scheme requirements, so the wire fraud statute is read in light of the case law on mail fraud."  United States v. Manarite, 44 F.3d 1407, 1412 n.5 (9th Cir. 1995).

dismiss Plaintiffs' FAC on this ground alone.  The Court quite clearly informed Plaintiffs that the amended complaint could not contain new allegations not already articulated in the original complaint.  (Apr. 2010 Order at 20.)  Plaintiffs were granted leave only to add additional factual assertions of the wire fraud as it was pled.  In this FAC, however, Plaintiffs' wire fraud charge is based on an entirely new theory.  In the original complaint, Plaintiffs' wire fraud charge was based on the fact that two defendants, Kanan Blake and Leena Blake, lived in California and received wire transfers from Hawaii.  (Compl. at 18; Apr. 2010 Order at 10-11.)  Now, Plaintiffs do not reassert this theory in their FAC, and instead base the wire fraud claim on the interstate actions of Ceridian and First Hawaiian Bank.  The Court did not grant Plaintiffs leave to assert new legal theories in this case.  Nevertheless, the Court has evaluated Plaintiffs' claims anew and concluded that Plaintiffs' wire fraud claim is meritless and does not adequately plead wire fraud as a predicate act.  For the same reasons, Plaintiffs have clearly not met the heightened pleadings requirements of Rule 9(b).

2.     Mail Fraud

Plaintiffs also attempt to plead predicate acts through mail fraud.  The Court thoroughly reviewed this issue when evaluating Defendants' first motion to dismiss the original complaint, and the Court concluded that Plaintiffs failed to adequately plead predicate acts because the mailing of tax returns to the IRS "occurred after consummation of the fraudulent objection to retain funds from Plaintiffs" and were not incident to the essential part of the scheme.  (Apr. 2010 Order at 9.)  Plaintiffs did not file a motion for reconsideration of the Court's order.  Nevertheless, Plaintiffs raise essentially the same arguments in their opposition to Defendants' newest motion to dismiss.  The Court reevaluates this issue in the context of the new complaint before the Court.

Allegations of mail fraud are ancillary to allegations of fraud, and they depend upon a finding that the mail was sent with the intent to defraud.  18 U.S.C § 1341; see United States v. Rasheed, 663 F.2d 843, 847 (9th Cir. 1981) ("[S]pecific intent to defraud is an element of the crime of mail fraud."); see also Horn v. Ray E. Friedman & Co., 776 F.2d 777, 782 (8th Cir. 1985) ("Not having been shown to have committed any fraudulent act, [defendant] could not have violated section 1343.").  Plaintiffs must show that "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the

16

United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir. 1986).

"To be part of the execution of the fraud . . . the use of the mails need not be an essential element of the scheme.  It is sufficient for the mailing to be 'incident to an essential part of the scheme, or a step in the plot.'" Schmuck v. United States, 489 U.S. 705, 710-11 (1989) (citations and quotations omitted).  The issue before the Court, as before, is whether the mailings in this case were incident to the essential part of the scheme.  Once again, the Court concludes that they were not.

The first allegation of mail fraud is derived from Ceridian's mail activities.  Ceridian's Honolulu office transmitted client report and payroll payment communications to Plaintiffs by way of a courier service, which in turn used an air cargo service (Aloha Airlines).  (FAC ¶ 64.)  Helen Blake allegedly "intercepted" and "concealed" the client report from Plaintiffs so that Plaintiffs would not become aware of the embezzlement scheme.  (Id. ¶¶ 82-83.)  The Court rejects Plaintiffs' contention that these report and payroll communications from Ceridian to Plaintiffs was a "a step in the plot" to embezzle funds from Plaintiffs.  By Plaintiffs' own words, these reports and communications were sent to Plaintiffs

only after the payments had been made.  In other words, the funds were already

transferred.  Moreover, there is absolutely no allegation in the FAC that any named

defendants participated or aided in this "concealment."

   The second allegation of mail fraud is derived from Defendants' tax

return mailings.  Defendants allegedly incorporated their "false" W-2 forms into

their federal and state taxes, which they submitted either via mail or wire

communication.  (Id. ¶¶ 97-101.)  Plaintiffs contend that such submissions "were

necessarily incident to the fraudulent scheme, because the co-Defendants' chosen

method of carrying out the scheme, by use of the payroll service, meant that co-

Defendants were required to submit their [W-2] to the [IRS].  Failure to do so

would have resulted in a discrepancy between the wage and taxes information."

(Id. ¶ 100.)  Essentially, Plaintiffs argue that the mailing of taxes was "incident to

the fraudulent scheme" because failing to file taxes would have increased the

likelihood that Defendants would get caught.  The Court is unpersuaded by this

reasoning.  The alleged fraudulent scheme was to embezzle money from Plaintiffs.

The fact that Defendants might have filed a tax return on these funds, even to

"cover their tracks," was not an act that resulted in embezzling money.  In fact, the

money was already embezzled when Defendants filed their taxes.  The Ninth

Circuit's holding in United States v. Manarite is instructive.  44 F.3d 1407 (9th Cir.

18

1995).  The defendants had allegedly engaged in a chip-cashing scheme and credit scam in Las Vegas.  The defendants structured the scam in such a way as to delay mailings or telephone calls, to increase their chance of avoiding detection.  The Ninth Circuit held that this was insufficient to constitute a predicate act, because the scheme was already complete.  "The fact that the delay enhanced the Manarites' ability to escape detection [was] insufficient."  Id. at 1412 (emphasis omitted).  Likewise, even if mailing taxes enhanced Defendants' chance of success in their alleged scheme, this does not change the fact that the scheme would have been complete when Defendants received their money.

Even if Defendants did have the intent to deceive at the time the taxes were mailed or wired, it would have been to deceive the IRS, not Plaintiffs. Plaintiffs were certainly not auditing Defendants' taxes and income.  The mailing of taxes would have been an attempt to avoid being caught by the IRS.  Plaintiffs surely do not have standing to assert a personal lawsuit based on fraud to the government.

Plaintiffs argue that it is immaterial that the mail fraud might also constitute fraud against a third party (the government), and that the mailing can still constitute predicate acts.  (Opp'n at 15-16.)  Plaintiffs cite to case in which the Northern District of Illinois discussed whether mailing tax returns might constitute

predicate acts.  <u>Balabanos v. N. Am. Inv. Group, Ltd.</u>, 684 F. Supp. 503, 507 (N.D. Ill. 1988).  In <u>Balabanos</u>, the claims consisted of an "abuse tax shelter scheme," and the "crux of the scheme was to sell plaintiffs and others limited partnerships in syndicated real estate packages through which expenditures would qualify for investment tax credits ("ITC") under the Internal Revenue Code."  <u>Id.</u> at 505.  The court determined that the plaintiffs might have been able to demonstrate a pattern of racketeering activity if they had properly pled the IRS mailings as the predicate acts.  <u>Id.</u> at 507.  The Court finds that <u>Balabanos</u> is distinguishable from the case before it, and in fact <u>Balabanos</u> demonstrates why the tax mailings in this case <u>do not</u> qualify as predicate acts.  In <u>Balabanos</u>, the very nature of the scheme involved income tax schemes.  In contrast, the scheme at issue here is not a tax shelter scheme.  Plaintiffs allege simply that Defendants embezzled money from private corporations.  Likewise, Plaintiffs' citation to <u>United States v. Dowling</u>, 739 F.2d 1445 (9th Cir. 1984) <u>rev'd</u> 473 U.S. 207 (1985), a Ninth Circuit case regarding unauthorized distribution of copyrighted materials, is not persuasive.  Plaintiffs cite <u>Dowling</u> for the proposition that a "mailing need not be from the perpetrator to the victim to be in furtherance of the scheme to defraud."  <u>Id.</u> at 1450.  Even in acknowledging this basic principal, the Ninth Circuit concluded that the defendant's use of mail to attract customers "was an integral feature of the

business' success . . . [and] was clearly in furtherance of his scheme to defraud the copyright owners of their royalty fees." Id.  In Dowling, the way the defendant defrauded the plaintiff was to sell "bootleg" records without consent of the copyright proprietors; obviously, mailing the bootleg records or advertising their sale would be an integral part of the scheme.  Id. at 1446.  There is no such direct relationship in the case before this Court.[2]

Plaintiffs next argue that United States v. Dadanian, 818 F.2d 1443 (9th Cir. 1987), modified by 856 F.2d 1391 (9th Cir. 1988), is applicable because the Ninth Circuit held that even when mailings are required under state law, the mailings themselves can still constitute mail fraud under RICO if the mailings were false and fraudulent.  The Court finds that Dadanian is inapposite.[3]  In Dadanian, an individual mailed statements of economic interest to the California Fair Political Practices Commission, as was required by state law.  Id. at 1446. The statements were "false on their face" and failed to disclose income from certain businesses. Id.

---

[2] The Court is likewise unpersuaded by Plaintiffs' other cited cases regarding third-party mailings.  In each case cited by Plaintiffs, the third party was clearly an integral part of the scheme, such as mailings to the Department of Insurance for an insurance scheme.

[3] Reliance on United States v. Frega, 933 F. Supp. 1536 (S.D. Cal. 1996), is likewise misplaced because in Frega, the mailings were themselves false.

As Defendants note, there is no allegation or legal theory that the IRS returns were "false."  Even if this Court were to assume that Defendants had received funds illegally, Defendants could have reported their full income in their taxes, including the illegally-gotten income.  Plaintiffs make no allegation that Defendants <u>omitted</u> the supposedly embezzled funds from their taxes.  To the contrary, Plaintiffs allege that Defendants <u>did</u> include the funds in the taxes.  Based on the allegations in the FAC, Defendants did report the income they had received.  Plaintiffs' own argument defeats itself.

Accordingly, the Court concludes that Plaintiffs have failed to cure the deficiencies in their complaint.  Further, Plaintiffs do not demonstrate, or even allege, that any additional discovery would produce evidence to change this Court's analysis.  Defendants' motion is GRANTED as to Count I, and Count I is DISMISSED WITH PREJUDICE.

II.    <u>Existence of an Enterprise</u>

Because Plaintiffs have failed to plead the requisite predicate acts, Plaintiffs' RICO claim may be dismissed on this basis alone.  <u>See</u> <u>Chaset</u>, 300 F.3d at 1086 (noting that the predicate acts are a necessary component to a RICO charge).  Defendants' motion to dismiss is also based on a failure to plead the

existence of an enterprise.  Plaintiffs counter Defendants' argument only to claim that the existence of the enterprise would be a fact for the jury.  Even if Plaintiffs properly pled an enterprise, however, the absence of predicate acts is fatal to their RICO claim.  Accordingly, the Court need not reach this issue.

## III.    Count II – Conspiracy

In Count II, Plaintiffs claim that Defendants violated 18 U.S.C. §1962(d), which prohibits any person from conspiring to violate any of the provisions of subsections (a), (b), and (c).  Plaintiffs assert several alternative grounds upon which to plead a conspiracy pursuant to 18 U.S.C. § 1962(d).  According to Plaintiffs, Defendants substantially participated in the scheme either by accepting funds that they knew were embezzled and filing tax returns, or, in the alternative, by knowingly facilitating Helen Blake's operation of an enterprise. (FAC ¶¶ 148-153.)

"[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy."  Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000).  "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses."  Id.  In

23

this case, Plaintiffs's conspiracy claim assumes that Defendants were involved in at least two predicate offenses (the mail and wire fraud). Although Plaintiffs are correct that a conspiracy claim may survive a court's ultimate conclusion that the underlying violation cannot be proven, there must be a properly pled underlying violation at the outset.

For the reasons set forth above, the Court concludes that Plaintiffs did not adequately plead predicate offenses, and the conspiracy claim therefore fails as well. "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." Id.; see Wagh, 348 F.3d at 1112.

Accordingly, Defendants' motion is GRANTED as to Count II, and Count II is DISMISSED WITH PREJUDICE.

IV.    Motions for Joinder

Kanan Blake, Leena Blake, Patricia Rider-Blake, and Keoni Blake have filed joinders in this motion. They seek the same relief, and the arguments for dismissal apply equally to them as to Alva Blake. The motions for joinder are unopposed. Accordingly, the motions for joinder are GRANTED.

24

V.      State Law Claims

A court may decline to exercise supplemental jurisdiction in certain circumstances, including when the district court has dismissed all claims over which it had original jurisdiction.  28 U.S.C.  § 1367(c)(3).  Dismissal of the remaining state law claims without prejudice is proper when federal claims have been dismissed.  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir. 2001).  In light of the relatively early stage of this litigation, and the fact that only questions of state law remain, the Court finds that declining supplemental jurisdiction over the state claims and dismissing them without prejudice is appropriate.

## CONCLUSION

For the reasons stated above, the Court: (1) GRANTS motions for joinder; (2) GRANTS Defendants' motion to dismiss; (3) DISMISSES WITH PREJUDICE Counts I and II; and (4) DECLINES supplemental jurisdiction over

remaining state law claims.  The state law claims are hereby DISMISSED

WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 10, 2010.



_____
David Alan Ezra
United States District Judge

O. Thronas, Inc., et al. v. Blake, et al., CV No. 09-00353 DAE-LEK; ORDER: (1)
GRANTING MOTIONS FOR JOINDER; (2) GRANTING DEFENDANTS'
MOTION TO DISMISS; (3) DISMISSING WITH PREJUDICE COUNTS I AND
II; (4) DECLINING SUPPLEMENTAL JURISDICTION OVER REMAINING
STATE LAW CLAIMS; AND (5) VACATING HEARING